**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron M. Zamora,<br><br>            Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents,<br><br>            Defendant. | No. CV-22-01583-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants Arizona Board of Regents ("ABOR") and Arizona State University's ("ASU" or, together with ABOR, "Defendants") Motion to Dismiss (the "Motion") (Doc. 12). Defendants seek dismissal of Plaintiff Aaron M. Zamora's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion has been fully briefed and is ready for review. (Docs. 12, 14, & 16).[1] For the following reasons, the Court grants Defendants' Motion.[2]

---

[1] After Defendants' Reply brief (Doc. 16) was filed, Plaintiff filed a Motion for Leave to File Sur-Reply (Doc. 17). The Court denies Plaintiff's Motion for Leave to File Sur-Reply because Plaintiff fails to explain why this Court must consider an additional nine pages of briefing. The Court is fully capable of adequately ruling on Plaintiff's Motion to Dismiss without considering Plaintiff's Sur-Reply.

[2] Because it would not assist in resolution of the instant issues, the Court finds the pending Motion suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. BACKGROUND

In July 2019, Plaintiff began his employment with ASU as a parking assistant on ASU's Polytechnic campus in Mesa, Arizona. (Doc. 1 at 2–3, 5). ASU is a public university governed by the ABOR which, according to Plaintiff's Complaint, is "a 12-member board created under the Arizona Constitution as the governing body for the State of Arizona's public university system." (*Id.*). Plaintiff alleges that he suffered various forms of discrimination during his employment, including discrimination on the basis of mental and physical disabilities, race, and national origin. (*Id.* at 1, 4). Plaintiff alleges that he informed ASU of certain learning disabilities at the time of his application. (*Id.* at 5). Plaintiff alleges that, upon starting the job, ASU failed to provide him with any formal training for the position. (*Id.* at 5–7). Nonetheless, Plaintiff alleges that he had no performance issues between October and December 2019. (*Id.* at 7–8). On December 17, 2019, Plaintiff underwent an emergency appendectomy and was "placed on FMLA medical leave." (*Id.* at 9). Due to post-surgical complications, Plaintiff remained on leave until January 2020. (*Id.*). Upon returning to work, Plaintiff made his first request for accommodation due to his medical condition ("cyclic vomiting syndrome") and "autistic learning disability." (*Id.*). On February 3, 2020, Plaintiff provided a doctors' note to ASU to support his request. (*Id.*).

On February 28, 2020, Plaintiff alleges that he received a negative performance review from his supervisor Kelly Fiala stating that he was "not meeting expectations." (*Id.*). Ms. Fiala apparently instructed Plaintiff to sign certain paperwork concerning a "fresh start" and "attempted" to include a requirement that Plaintiff provide ASU with a three-hour notice prior to calling out due to his medical condition. (*Id.* at 10). Plaintiff contends that this "fresh start plan" was in retaliation for his request for accommodations. (*Id.* at 11–12). Around this same time, Plaintiff alleges that Ms. Fiala began micro-managing him, intentionally stressing him out, and otherwise aggravating him "to trigger his chronic vomiting syndrome." (*Id.* at 9). Plaintiff alleges that this created a hostile work environment and amounted to discrimination on the basis of his disabilities. (*Id.* at 10–11). On March 11, 2020, Plaintiff alleges that Ms. Fiala "bad-mouth[ed]" him to another employee concerning his job performance, and acted in a violent and threatening manner

2

when he approached. (*Id.* at 12). Plaintiff reported the incident, but no action was taken "to discipline or correct [Ms. Fiala] on her hostile behavior or threatening conduct." (*Id.*).

In March 2020, Plaintiff alleges that he suffered additional discrimination related to his decision to wear a mask and bring cleaning supplies to work due to the COVID-19 pandemic. (*Id.*). Between March and May 2020, Plaintiff alleges that Ms. Fiala subjected him to additional performance reviews outside ASU's typical quarterly performance-review schedule. (*Id.* at 13–14). Plaintiff contends that these additional reviews contained negative performance reviews that amounted to additional retaliation as a result of his medical conditions. (*Id.* at 14). All the while, Plaintiff alleges that he continued to be denied adequate job training for his position. (*Id.* at 14–15).

On July 24, 2020, Plaintiff alleges that his request for a reasonable accommodation to work from home due to the pandemic was approved. (*Id.* at 16). Plaintiff continued to complain about his lack of adequate training and alleges that Ms. Fiala had set him up for failure in certain job duties involving the "Salesforce and Slack" systems. (*Id.* at 17). Plaintiff alleges that he "is a mentally disabled individual thrown into the deep end of the ASU's workforce pool and expected to swim without any clear training or guidance and held accountable to a higher standard tha[n] he was originally hired for." (*Id.* at 19). He continued to complain about his lack of adequate training but alleges that ASU did nothing to address the issue. (*Id.* at 19–20). Around the end of August or early September 2020, Plaintiff alleges that he was informed that he was being terminated for his "lack of performance and productivity." (*Id.* at 19). Plaintiff attempted to refute the termination by explaining ASU's failure to properly train him, but his termination became finalized on September 18, 2020. (*Id.* at 21). Plaintiff alleges that he filed a charge with the EEOC for discrimination. (*Id.* at 22–24).

On September 19, 2022, Plaintiff filed the Complaint in this matter. Plaintiff asserts eight claims against Defendants:

> (i) "Failure to Train Disability Discrimination" under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101–103, and Section

3

> 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794(a);
>
> (ii) "Race and National Origin Disability Discrimination," in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2;
>
> (iii) "Retaliation," in violation of Title VII, the ADA, the ADAAA, and the Rehabilitation Act;
>
> (iv) "Disparate Impact," in violation of Title VII, the ADA, the ADAAA, and the Rehabilitation Act;
>
> (v) "Deprivation of Rights," in violation of 42 U.S.C. § 1983, the ADA, the ADAAA, and the Rehabilitation Act;
>
> (vi) Violation of the Fourteenth Amendment's Equal Protection Clause, pursuant to 42 U.S.C. § 1983;
>
> (vii) "Adverse Actions," in violation of the ADA and the ADAAA; and
>
> (viii) Violation of the Arizona With Disabilities Act, A.R.S. § 41-1492.

(*Id.* at 31–40). On December 7, 2022, Defendants filed the instant Motion to Dismiss Plaintiff's claims for failure to state a claim. (Doc. 12). On January 6, 2023, Plaintiff responded in opposition to Defendants' Motion (Doc. 14), and on January 20, 2023, Defendant finished briefing of the Motion by filing a Reply brief (Doc. 16). On January 23, 2023, Plaintiff requested leave to file a sur-reply, a request that Defendants contested in their response three days later. (*See* Docs. 17, 19). As noted above, the Court has denied Plaintiff's request to file a sur-reply. *See supra* n.1.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*,

556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

### III.   DISCUSSION

#### A. Defendant ASU Must Be Dismissed

As an initial matter, the Court finds that dismissal of Defendant ASU is appropriate. Unlike ABOR, ASU is not an entity that is subject to suit, as this Court has explained in a previous case:

> In Arizona, the powers of any agency are defined by the statutes creating it. As this general rule relates to an agency being sued, the statutes creating the entity must provide the agency with the power to sue and be sued. [A.R.S.] § 15-1601 authorized the establishment of [ASU], but it did *not* grant the university the power to sue or be sued. Instead, pursuant to A.R.S. § 15-1625, that authority is vested with the [ABOR], which oversees ASU.
>
> The effect of [A.R.S.] §§ 15-1601 and 15-1625 is clear. Arizona State University *cannot be subject to suit* because the Arizona Legislature has not so provided. However, [ABOR] *is an entity subject to suit* pursuant to § 15-1625. Therefore, the complaint against ASU will be dismissed.

*Lazarescu v. Ariz. State Univ.*, 230 F.R.D. 596, 601 (D. Ariz. 2005) (internal citations omitted) (emphasis added). As in *Lazarescu*, the Court dismisses ASU from this action and will proceed to rule on Defendants' Motion as it relates to ABOR only. *See also Cohen v. Ariz. State Univ.*, No. CV-21-01178-PHX-GMS, 2022 WL 1747776, at *8 (D. Ariz. May 31, 2022) ("As ASU is not properly subject to suit, Plaintiff's complaint against ASU is dismissed."); *Smith v. Dep't of Educ.*, 158 Fed. Appx. 821, 823 (9th Cir. 2005) ("The district court properly dismissed Smith's claims against the University of Arizona because it is not a jural entity with the capacity to sue or be sued, *see* [A.R.S.] § 15-1626, and the Arizona Board of Regents is the proper party, *see* [A.R.S.] § 15-1625(3).").

///

///

**B. Plaintiff Fails to State Claims Against Defendant ABOR**

Plaintiff's eight claims against ABOR include violations of the ADA, the ADAAA, the Rehabilitation Act, Title VII, § 1983, and A.R.S. § 41-1492. (Doc. 1 at 31–40). Defendant argues that all eight claims must be dismissed for various reasons, including ABOR's Eleventh Amendment sovereign immunity, Plaintiff's failure to exhaust administrative remedies, the relevant statute of limitations, and failure to state a claim. (Doc. 12 at 4–9).

*i.     Sovereign Immunity and ADA / ADAAA Claims*

The Eleventh Amendment entitles states to sovereign immunity, preventing them from being sued without their consent. *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999). ABOR "is treated as the State of Arizona under Arizona law." *Rutledge v. Ariz. Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981). "Therefore, to the extent that Eleventh Amendment sovereign immunity applies to the State of Arizona, it would apply equally to the . . . [ABOR]." *Wanmei Ni v. Univ. of Ariz.*, No. CV-14-02561-TUC-BGM, 2016 WL 9110175, at *2 (D. Ariz. Mar. 14, 2016). "Congress may abrogate the State's Eleventh Amendment immunity . . . [if] Congress unequivocally expressed its intent to abrogate that immunity . . . and . . . acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

With respect to claims under Title I of the ADA, the Supreme Court has expressly held that "Congress did *not* validly abrogate the States' sovereign immunity from suit by private individuals for money damages." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001). The ADAAA does not change this analysis, as those amendments did not relate to abrogation of sovereign immunity. *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 832 (E.D. La. 2012); *Goodnow v. Okla. Dep't of Hum. Servs.*, No. 11-CV-54-GKF-FHM, 2011 WL 4830183, at *1 (N.D. Okla. Oct. 12, 2011) ("[T]he ADAAA is devoid of language purporting to negate the constitutional limitation upon the authority of Congress to abrogate sovereign immunity recognized in *Garrett*."). Moreover, ABOR's Eleventh Amendment immunity applies equally to bar Plaintiff's ADA and ADAAA claims regardless of whether those claims are for discrimination under Title I or retaliation

under Title V, at least to the extent the retaliation claims are based on alleged violations of Title I. *See Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001).

Here, Plaintiff seeks only money damages. (*See* Doc. 1 at 42). Thus, the Eleventh Amendment bars Plaintiff's claims to the extent they are brought under Title I and Title V of the ADA and the ADAAA.[3] *See Wanmei Ni*, 2016 WL 9110175, at *2 (dismissing ADA claims against ABOR on basis of Eleventh Amendment sovereign immunity). Accordingly, the Court dismisses with prejudice Plaintiff's ADA and ADAAA claims under Counts I, III, IV, V, and VII. The Court notes that this dismisses Count VII entirely as Plaintiff does not bring any other claims under that Count.

### ii.  *Section 1983 Claims (Counts V and VI)*

"Section 1983 provides a method by which individuals can sue for violations of their federal rights." *Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1188 (9th Cir. 2002). "One of the requisite elements for stating a claim under § 1983 is that the violation was committed by a 'person' acting under color of state law." *Id.* (citation omitted). "[A] state is not a 'person' for purposes of section 1983 [and] likewise 'arms of the State' are not 'persons' under section 1983." *Krist v. Ariz.*, No. CV17-2524 PHX DGC, 2018 WL 1570260, at *3 (D. Ariz. Mar. 30, 2018) (quoting *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991)).

Therefore, Plaintiff's § 1983 claims must be dismissed with prejudice because they are brought against ABOR, which is not a "person" but rather an arm of the State of Arizona. *See Rounds*, 166 F.3d at 1035 (university and board of regents cannot be sued under § 1983). To the extent Plaintiff brings § 1983 claims in Counts V and VI of his

---

[3] Unlike claims under Title I of the ADA, claims under Title II of the ADA are *not* barred by sovereign immunity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (finding that Title II validly abrogates state sovereign immunity). In further contrast with Title I, plaintiffs are *not* required to file charges with the EEOC prior to initiating a lawsuit under Title II. *See Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir. 1999).

Having reviewed Plaintiff's Complaint, however, the Court does not find that Plaintiff asserts any Title II claims against Defendants. Indeed, Plaintiff could not likely sustain such a claim on the facts alleged, as the Ninth Circuit has concluded that Congress did not intend for Title II to apply to employment discrimination. *See id.* at 1178.

7

Complaint, such claims are dismissed with prejudice. The Court notes that this dismisses Count VI entirely as Plaintiff does not bring any other claims under that Count.

### iii. Rehabilitation Act Claims

"Section 504 of the Rehabilitation Act prohibits organizations that receive federal funds . . . from discriminating against individuals with disabilities." *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (citing 29 U.S.C. § 794(a), (b)(3)(A)(ii)). "Unlike Plaintiff's claims under Title I of the ADA, 'states are subject to suit in federal court under the Rehabilitation Act if they accept federal Rehabilitation Act funds.'" *Vanderhoff v. Arizona*, No. CV-16-08111-PCT-DJH, 2017 WL 6415400, at *4 (D. Ariz. July 20, 2017) (quoting *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001)). "By agreeing to accept such funds, the state agrees to forgo an Eleventh Amendment defense." *Id.* (citing *Douglas*, 271 F.3d at 820-821).

In this case, Plaintiff asserts Rehabilitation Act claims for discrimination, retaliation, "disparate impact," and "deprivation of rights" in Counts I, III, IV, and V. (*See* Doc. 1 at 31–32, 34–36). As the Court just noted, these claims are not barred by ABOR's Eleventh Amendment sovereign immunity. Rather, ABOR argues that Plaintiff's Rehabilitation Act claims must be dismissed because they are time-barred. Although Plaintiff's Response brief addresses statute-of-limitations issues with respect to his other claims, (*see* Doc. 14 at 15–16), he fails to meaningfully respond to Defendant's argument that his *Rehabilitation Act* claims are time-barred.

Defendant is correct that a two-year statute of limitations applies. In *Vanderhoff*, this Court found that

> [c]laims under the Rehabilitation Act are subject to the statute of limitations provided by analogous state law. . . . In Arizona, the two-year statute of limitations for personal injury claims applies to Rehabilitation Act claims. . . . "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'"

*Vanderhoff*, 2017 WL 6415400, at *4 (internal citations omitted). Like here, the plaintiff in *Vanderhoff* failed to meaningfully dispute this statute of limitations and the *Vanderhoff*

8

court concluded that a two-year statute of limitations applied. *See id.* ("Plaintiff does not dispute that the limitations period for [Rehabilitation Act] claims is determined by looking to state law or that the applicable limitations period for her [Rehabilitation Act] claims is two years. The Court will therefore apply a two year statute of limitations here.").

Here, it is clear from the face of Plaintiff's Complaint that any claims he may assert under the Rehabilitation Act occurred more than two years prior to the filing of this action on September 19, 2022. Plaintiff was terminated, at the latest, on September 18, 2020.[4] Thus, any discrimination, retaliation, "disparate impact," or "deprivation of rights" must have necessarily occurred more than two years prior to the filing of this Complaint. Again, Plaintiff does not offer any meaningful argument that would change this, such as an equitable estoppel argument or an argument that the statute of limitations was tolled at any point. Therefore, the Court dismisses with prejudice Plaintiff's Rehabilitation Act claims under Counts I, III, IV, and V. The Court notes that this results in a complete dismissal of Counts I and V, as Plaintiff's Rehabilitation Act claims were the only remaining claims in each of these Counts.

> *iv.* ***Title VII Claims***

"Before bringing a Title VII claim in district court, a plaintiff must exhaust her administrative remedies by timely filing a charge with the EEOC, thereby affording the agency the opportunity to investigate the charge." *Hukman v. Alaska Airlines Inc.*, No. CV-18-01104-PHX-DLR, 2018 WL 6928741, at *1 (D. Ariz. Nov. 7, 2018) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002)). After filing the charge, a plaintiff receives a right-to-sue letter from the EEOC and is thereafter permitted to file a claim in district court. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citing 42 U.S.C. § 2000e-5(f)(1)). "Timely exhaustion of administrative remedies is a statutory requirement to filing suit under Title VII." *Hukman*, 2018 WL 6928741, at *1

---

[4] Plaintiff's Complaint appears to alternatively allege termination on August 28, 2020 or September 4, 2020. (Doc. 1 at 20). Thus, for purposes of this statute-of-limitations analysis, the Court uses the latest possible date of September 18, 2020. (*See id.* at 21 (alleging *formal* termination and separation on September 18)).

9

(citing *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001)).

Here, Defendant contends that Plaintiff failed to obtain a right-to-sue letter from the EEOC prior to filing this suit and that his Title VII claims must therefore be dismissed for failure to exhaust administrative remedies. (Doc. 12 at 7–8). Having reviewed the entire record, the Court finds that Plaintiff indeed appears to have filed this suit *before* he received a right-to-sue letter from the EEOC. Plaintiff's Complaint alleges that he timely filed a Charge with the EEOC on October 27, 2020. (*See* Doc. 1 at 4). Later, in alleging Count II, the Complaint states that Plaintiff filed an EEOC Charge "in March 2021." (*Id.* at 33). As Defendant points out, however, Plaintiff's Complaint does *not* allege that he ever received a right-to-sue letter. In fact, Plaintiff's Response brief seems to admit that he initiated this action before receiving a right-to-sue letter, as he argues that the EEOC was "far behind and burdened" in light of the pandemic and that "they had Plaintiff [] file his claim before issuing the letter of right to sue to preserve his rights to sue." (Doc. 14 at 15). On March 14, 2023, Plaintiff filed with the Court a right-to-sue letter from the EEOC dated March 13, 2023. (*See* Doc. 21 at 6–7). Thus, it appears that Plaintiff finally received his right-to-sue letter approximately two years after filing his March 2021 EEOC Charge.

Although Defendant contends that Plaintiff's Title VII claims should be dismissed because Plaintiff filed them prior to receiving the right-to-sue letter, the Court finds that Defendant's argument is without merit under the relevant Ninth Circuit authority. A plaintiff becomes entitled to an EEOC right-to-sue letter 180 days after filing his charge with the EEOC. 42 U.S.C. § 2000e–5(f)(1); *see Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010). In *Stiefel*, the Ninth Circuit held that an individual *may* file suit in district court within 90 days after becoming eligible for an EEOC right-to-sue letter, *even if* that individual has not yet received the right-to-sue letter. *Stiefel*, 624 F.3d at 1245. The 90-day period "operates as a limitation period" and if the individual "does not file suit within [90] days . . . then the action is time-barred." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007) (citations omitted).

Here, Plaintiff alleges that he filed his EEOC Charge in March 2021. Thus, he was entitled to a right-to-sue letter 180 days later, or sometime in September 2021. By

September 2022, Plaintiff had *still* not received a right-to-sue letter. At that time, he filed the Complaint in the present action. Although the fact that Plaintiff filed this suit prior to receiving his right-to-sue letter does not bar his Title VII claims for failure to exhaust administrative remedies, the claims must nonetheless be dismissed because they were filed longer than 90 days after Plaintiff became eligible for a right-to-sue letter and are therefore time-barred. Plaintiff's Title VII claims under Counts II, III, and IV are dismissed with prejudice.

> *v.*   *A.R.S. § 41-1492 Claim*

With respect to Plaintiff's apparent claims under A.R.S. § 41-1492, the Court agrees with Defendant that dismissal with prejudice is appropriate for failure to file within the requisite statute of limitations. *See* A.R.S. § 41-1492.08(C) (providing that an aggrieved person subjected to discrimination under the statute "may file a civil action . . . *not later than two years* after the occurrence of" the wrongful actions). The Court dismisses with prejudice Plaintiff's § 41-1492 claim in Count VIII in its entirety.

## IV.   CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Here, the Court finds that leave to amend would be futile. As noted above, Defendant ASU is a non-jural entity that cannot be sued. As for Defendant ABOR, Plaintiff's claims were dismissed for reasons that cannot be fixed with leave to amend (*e.g.*, ABOR's immunity to suit and Plaintiff's failure to comply with statutes-of-limitations). Thus, the Court denies Plaintiff leave to amend and dismisses Plaintiff's claims with prejudice. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 17) is

**denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 12) is **granted**. Plaintiff's Complaint is **dismissed** in its entirety, **with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment** and **terminate this action accordingly**.

Dated this 7th day of July, 2023.

Honorable Steven P. Logan
United States District Judge